UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SGM HOLDINGS LLC, RICHARD FEATHERLY, LAWRENCE FIELD, PREMIER NATURAL RESOURCES LLC, and SYNDICATED GEO MANAGEMENT CORPORATION,

        Plaintiffs,

-v-

A JAMES ANDREWS, RICHARD GAINES, and KARL SCHLEDWITZ,

        Defendants.

CIVIL ACTION NO. 15 Civ. 8142 (PAC) (SLC)

**OPINION AND ORDER**

**SARAH L. CAVE,** United States Magistrate Judge.

Before the Court are (i) the letter-motion of non-party James T. Hughes Jr. ("Mr. Hughes") to be substituted in this action for Plaintiff Lawrence Field ("Mr. Field") based on Mr. Field's assignment to Mr. Hughes of "all of his claims against the Defendants" (ECF No. 147 at 1 (the "Substitution Motion"), and (ii) the letter-motion of Defendants A. James Andrews and Richard Gaines (together, the "Moving Defendants") "to either reopen discovery as to Mr. Hughes only for 45 days following Mr. Hughes becoming an Assignee Plaintiff or, in the alternative, retain Mr. Field as a Plaintiff pursuant to FRCP Rule 25 (c)." (ECF No. 166 at 2 (the "Discovery Motion," with the Substitution Motion, the "Motions")). For the reasons set forth below, the Substitution Motion is GRANTED, and the Discovery Motion is GRANTED IN PART and DENIED IN PART.

**I. BACKGROUND**

The background of this action is set forth in detail in prior decisions issued by the Honorable Paul A. Crotty and the undersigned and is incorporated herein by reference. See SGM Holdings LLC v. Andrews, No. 15 Civ. 8142 (PAC) (SLC), 2023 WL 6214238, at *1–4 (S.D.N.Y.

Sept. 25, 2023) ("SGM III"); SGM Holdings LLC v. Andrews, No. 15 Civ. 8142 (PAC) (SLC), 2022 WL 3447542, at *1–2 (S.D.N.Y. Aug. 17, 2022) ("SGM II"); SGM Holdings LLC v. Andrews, No. 15 Civ. 8142 (PAC) (HBP), 2017 WL 151634, at *1 (S.D.N.Y. Jan. 12, 2017) ("SGM I").[1] The Court sets forth only the background necessary to resolve the Motions.

### A. Factual Background

This case arises from a botched joint venture to purchase and redevelop oil and gas wells (the "Joint Venture"). SGM III, 2023 WL 6214238, at *1. The Joint Venture resulted in a litigation (the "DNV Action"), in which a set of investors (represented by Defendants in this action) sued its joint venturers (the Plaintiffs in this action) for fraud. Id. (See Complaint, DNV Inv. P'Ship v. Field, No. 15 Civ. 1255 (PAC) (S.D.N.Y. Apr. 2, 2014), ECF No. 1).[2] Plaintiffs bring this action pursuant to New York Judiciary Law § 487, alleging that Defendants knowingly made false and deceptive statements to this Court during the DNV Action. (See ECF No. 1).

Plaintiff Richard Featherly ("Mr. Featherly") was the President of Plaintiff Syndicated Geo Management Corporation ("Syndicated Geo") and the manager of Plaintiff SGM Holdings, LLC ("SGM"). SGM III, 2023 WL 6214238, at *1. Syndicated Geo entered into a letter agreement with Regent Private Capital, LLC ("Regent"), which was founded and directed by Mr. Field, to act as Syndicated Geo's agent in obtaining financing. Id. Regent described itself as a joint family office of the families of Plaintiffs Charles Stephenson ("Mr. Stephenson") and Mr. Field. Id.

---

[1] Internal citations and quotation marks are omitted from case citations unless otherwise indicated.
[2] On May 19, 2020, Judge Crotty granted summary judgment for the defendants in the DNV Action and terminated that case. DNV Inv. P'ship v. Field, No. 15 Civ. 1255 (PAC), 2020 WL 2539029, at *9 (S.D.N.Y. May 19, 2020).

In 2011, Syndicated Geo, through its agent Regent, sought financing for the acquisition and development of oil and gas fields. SGM III, 2023 WL 6214238, at *2. Mr. Field introduced the investment opportunity to a private equity firm called Metropolitan Equity Partners ("MEP") and its managing partner, Paul Lisiak ("Mr. Lisiak"). Id. at *1–2. Ultimately, Regent brokered the Joint Venture, in which MEP and SGM would jointly own and manage the oil and gas fields. Id. at *2. To finance the Joint Venture, MEP formed a new limited partnership, Metropolitan EIH13, LP ("Met13"). Id. at *1–2. Additionally, MEP formed a subsidiary for the Joint Venture named Reed Energy LLC ("Reed"). Id. at *2. Met13 intended to use the capital it raised to lend money to Reed at a 20% interest rate. Id. In return for the capital, Reed would acquire drilling rights from SGM. Id.

Shortly after the Joint Venture was funded, natural gas prices tanked to a ten-year low, substantially reducing the value of the oil and gas fields. SGM III, 2023 WL 6214238, at *2. Moreover, the operations were in disrepair and required extensive investment to become productive. Id.

The crux of the DNV Action was that Mr. Featherly, Mr. Field, their subsidiaries, and several others perpetrated a fraud on Met13 to induce it into investing in nonproductive wells. SGM III, 2023 WL 6214238, at *2. In particular, months before the Joint Venture closed, Mr. Field introduced Bayswater Exploration and Production ("Bayswater") as a potential candidate to operate the "Shallow Operation" but withheld "Bayswater's concerns with the operation." Id. The plaintiffs in the DNV Action contended that had they "known of the negative information[,] . . . they would not have invested in Met13." Id.

3

**B.      Procedural Background**

On October 15, 2015, Plaintiffs commenced this action. (ECF No. 1). Pursuant to the most recent case management plan, fact discovery closed on March 16, 2022 and expert discovery closed on April 29, 2022. (ECF No. 61 ¶¶ 5, 7). On August 17, 2022, at Plaintiffs' request, the Court directed Defendants to produce certain documents they had previously withheld on privilege grounds. SGM II, 2022 WL 3447542, at *3. In November 2022, the parties cross-moved for summary judgment (ECF Nos. 95; 102), which Judge Crotty denied on September 25, 2023. SGM III, 2023 WL 6214238, at *8.

On December 13, 2023, at Defendants' request, the Court permitted certain additional fact discovery. (ECF No. 140 (the "Dec. 13 Order")). Specifically, the Court directed (i) Plaintiffs to produce by January 31, 2024 certain of their counsel's billing records for legal services for which they seek reimbursement by Defendants; (ii) for such legal services performed thereafter, Plaintiffs to produce the billing records on a rolling basis and at least every 30 days; and (iii) the continued deposition of Mr. Stephenson to take pace by February 29, 2024, limited to questions relating to the assignments of certain of Plaintiffs' claims to Mr. Stephenson (see ECF No. 99-20) and to counsel's billing records for services that relate to those assignments. (ECF No. 140 ¶ 1). The Court denied "[a]ll other requests for discovery, including expert discovery, . . . for failure to establish good cause." (Id. ¶ 2 (citing Fed. R. Civ. P. 16(b)(4))).

On December 14, 2023, noting that Mr. Field had not provided a current mailing address in the six months since Judge Crotty had granted his prior counsel's motion to withdraw (see ECF No. 115), the Court ordered Mr. Field to show cause why his claims should not be dismissed for failure to prosecute. (ECF No. 142 (the "OTSC")).

On January 11, 2024, Mr. Hughes filed a letter stating that, on October 23, 2023, Mr. Field had assigned to him "all of [Mr. Field's] claims against the Defendants" in this action. (ECF No. 147 at 1 (the "Letter")). The Letter included a copy of the assignment agreement between Mr. Field and Mr. Hughes. (ECF No. 147-1 (the "Assignment")). The Assignment provides, inter alia, that Mr. Field assigns to Mr. Hughes "all rights, title, ownership, and interests in and to any and call claims and causes of action along with all rights to purse claims that [Mr. Field] has against (i) the Plaintiffs [in the DNV Action, i.e., the Defendants in this action] or (ii) the attorneys who currently or represented Plaintiffs in the [DNV Action]." (Id. at 1). The assigned claims "include, but are not limited to, all claims that [Mr. Field] has asserted or could assert in [this action], including all rights to recover attorneys' fees, costs, and expenses and treble damages pursuant to N.Y. Judiciary Law section 487, and any other legal or equitable theories of relief as against [the Defendants in this action] that [Mr. Field] has or ever had." (Id.)

On January 31, 2023, construing the Letter as the Substitution Motion under Federal Rule of Civil Procedure 25(c), the Court ordered that any opposition to the Substitution Motion be filed by February 14, 2024, and that Mr. Hughes' reply be filed by February 21, 2024. (ECF No. 151 ¶¶ 1–2 (the "Jan. 31 Order")). The Court also scheduled a telephone conference for February 29, 2024 to discuss the Substitution Motion. (Id. ¶ 3).

On February 9, 2024, Defendants filed a letter stating that they "do not oppose Mr. Hughes['] entry as an assignee/plaintiff for Mr. Field provid[ed] they have an opportunity to depose him and challenge the [A]ssignment prior to [the] discovery cutoff if they believe it is warranted." (ECF No. 155 at 1 ("Defendants' First Response")). On February 12, 2024, the Court

reiterated (i) that fact discovery had closed on March 16, 2022, and (ii) its directive for Mr. Hughes to file his reply by February 21, 2024.  (ECF No. 156 (citing ECF No. 61 ¶ 5)).

On February 14, 2024, the Moving Defendants filed a letter (i) repeating their position that they do not oppose the Substitution Motion, and (ii) "request[ing] that the Court reopen discovery as to Mr. Hughes only for 45 days."  (ECF No. 157 (the "First Request")).  Defendants argued that, "prior to substituting himself for Mr. Field as a Plaintiff, Mr. Hughes would not have been listed as a possible witness in this lawsuit[,]" despite also acknowledging that Mr. Hughes submitted what they describe as "some inconsequential declarations in the DNV [Action] as general counsel for an SGM entity."  (Id.)  Therefore, Defendants argued, "Mr. Hughes may well have relevant discoverable information that was not available to Defendants in either the DNV [Action] or this matter[,]" although they failed to specify any such discoverable information that may exist.  (Id.)  On February 15, 2024, the Court denied the First Request without prejudice to renewal for failure to comply with the Court's Individual Practices.  (ECF No. 160).

On February 19, 2024, Mr. Hughes filed a reply in support of the Substitution Motion.  (ECF No. 164).  He states that he has "no objection to providing copies of the invoices for which [he is] seeking recovery" and that he intends "to continue to produce [the] time records on a thirty (30) day rolling basis, if not more frequently."  (Id. at 3).  Mr. Hughes objects, however, to Defendants' request for further "substantive discovery," arguing that Defendants have failed to establish good cause for such discovery.  (Id. at 3–4).  He notes, inter alia, that "[f]or nearly a decade if not more, Defendants have known about [his] involvement as general counsel to SGM[,]" and that Defendants "could have noticed [his] deposition . . . at any time prior to the discovery cut-off" or "could have served written discovery requests[.]"  (Id. at 4–5).  "As a

6

reasonable compromise," however, Mr. Hughes has "offered to respond to 10 written interrogatories that are limited to the [A]ssignment of Mr. Field's claims to [Mr. Hughes]." (Id. at 5).

On February 21, 2024, the Moving Defendants filed the Discovery Motion, in which they renew the First Request and ask that "discovery in this matter be reopened for 45 days as to" Mr. Hughes. (ECF No. 166 at 1). They argue that the Substitution Motion "surprised" them because "Mr. Hughes seemed to play no part whatsoever in this" action, and that "Mr. Field, the current Plaintiff with the most knowledge of the DNV [Action] facts, now resides in California and would not be subject to a trial subpoena should he morph into a mere fact witness." (Id. at 1). The moving Defendants state that they "wish to inquire into which of [the] issues [in the Amended Complaint] Mr. Hughes expects to present evidence, what that evidence would be, and the strength of that evidence." (Id. at 2). They also state that they "would certainly agree with an order limiting discovery to the claims assigned to Mr. Hughes and billing records that relate to those assignments." (Id.) Finally, for the first time, the Moving Defendants request that, if the Court grants the Substitution Motion but does not grant the Discovery Motion, that it also "retain Mr. Field as a Plaintiff pursuant to FRCP Rule 25 (c)." (Id.)

## II. DISCUSSION

### A. Legal Standards

#### 1. Substitution

Under the Federal Rules of Civil Procedure, "[i]f an interest is transferred, the action may be continued by or against the original party unless the court, on motion, orders the transferee to be substituted in the action or joined with the original party." Fed. R. Civ. P. 25(c). "The

decision to substitute a successor in interest is 'generally within the sound discretion of the trial court.'" Cessna Fin. Corp. v. Gulf Jet LLC, No. 14 Civ. 2149 (ALC), 2021 WL 7447793, at *1 (S.D.N.Y. June 2, 2021) (quoting Organic Cow, LLC v. Ctr. For New Eng. Dairy Compact Rsch., 335 F.3d 66, 71 (2d Cir. 2003)). "A court should consider 'whether substitution will expedite and simplify the action.'" Id. (quoting U.S. Sec. & Exch. Comm'n v. Collector's Coffee Inc., 451 F. Supp. 3d 294, 298 (S.D.N.Y. 2020)). "[S]ubstitution is inappropriate where it 'would serve only to add duration, costs, and complexity to an action . . . [and] would prolong rather than bring the litigation nearer to its conclusion.'" Advanced Mktg. Group, Inc. v. Bus. Payment Sys., LLC, 269 F.R.D. 355, 359 (S.D.N.Y. 2010) (quoting Kumaran v. Nat'l Futures Ass'n, LLC, No. 20 Civ. 3668 (GHW), 2022 WL 3996962, at *2 (S.D.N.Y. Aug. 31, 2022)).

### 2. Modification of Discovery Schedule

A court-ordered discovery schedule "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). "A finding of good cause depends on the diligence of the moving party." Grochowski v. Phoenix Const., 318 F.3d 80, 86 (2d Cir.2003).

### B. Application

#### 1. The Substitution Motion is Granted.

Here, Mr. Hughes has provided proof of a transfer of interest, i.e., the Assignment between Mr. Field and Mr. Hughes. (ECF No. 147-1). The Assignment provides, inter alia, that Mr. Field assigns to Mr. Hughes "all rights, title, ownership, and interests in and to any and call claims and causes of action along with all rights to purse claims that [Mr. Field] has against (i) the Plaintiffs [in the DNV Action, i.e., the Defendants in this action] or (ii) the attorneys who currently or represented Plaintiffs in the [DNV Action]." (Id. at 1). The assigned claims "include, but are

not limited to, all claims that [Mr. Field] has asserted or could assert in [this action], including all rights to recover attorneys' fees, costs, and expenses and treble damages pursuant to N.Y. Judiciary Law section 487, and any other legal or equitable theories of relief as against [the Defendants in this action] that [Mr. Field] has or ever had." (Id.)  While Defendants seek additional information relating to the Assignment, they do not dispute that the Assignment occurred.  Indeed, Defendants have repeatedly stated that they do not oppose the Substitution Motion, provided that they are able to obtain additional discovery relating to the Assignment. (See ECF Nos. 155 at 1; 157).  In addition, although Mr. Hughes has not established that substitution would expedite or simplify the action, the Court is not persuaded that it "would serve only to add duration, costs, and complexity to an action . . . [and] would prolong rather than bring the litigation nearer to its conclusion."  Kumaran, 2022 WL 3996962, at *2.  As discussed below (see § II.B.2 supra), the Court will permit a limited set of interrogatories that will not unnecessarily prolong the case.  Accordingly, the Substitution Motion is GRANTED.[3]

### 2.    The Discovery Motion is Granted in Part and Denied in Part.

The Court finds that the Moving Defendants have not established good cause for the First Request.  They argue, without any support, that "Mr. Hughes may well have relevant discoverable information that was not available to Defendants in either the DNV [Action] or this matter" (ECF No. 157), and that they need "to inquire [of Mr. Hughes] into which of [the] issues [in the Amended Complaint] Mr. Hughes expects to present evidence, what that evidence would be, and the strength of that evidence."  (ECF No. 166 at 2).  Under Rule 25, however, "[t]he substitute is

---

[3] The Moving Defendants have not established—and the Court has not found—a basis to retain Mr. Field as a Plaintiff.

[] not litigating on his or her own behalf . . . , but rather stands in the shoes of the [substituted party]." Roe v. City of New York, No. 00 Civ. 9062 (RWS), 2003 WL 22715832, at *3 (S.D.N.Y. Nov. 19, 2003). Accordingly, whether Mr. Hughes possesses discoverable information concerning any Plaintiff's claims is unrelated to the Substitution Motion and is an issue that Defendants could and should have explored during discovery. The substitution of Mr. Hughes for Mr. Field does not establish good cause to extend discovery. See Fed. R. Civ. P. 16(b)(4). Defendants have stated, however, that they would "agree with an order limiting discovery to the claims assigned to Mr. Hughes and billing records that relate to those assignments" (ECF No. 166 at 1), and Mr. Hughes has agreed "to continue to produce [the] time records [on which Plaintiffs will base their claims] on a thirty (30) day rolling basis, if not more frequently" and "to respond to 10 written interrogatories that are limited to the [A]ssignment of Mr. Field's claims to [Mr. Hughes]." (Id. at 3, 5). Accordingly, the Court will permit Defendants to serve on Mr. Hughes a total of ten interrogatories relating to the Assignment (the "Interrogatories"). Mr. Hughes is also directed to comply with the Dec. 13 Order to promptly and continually produce the billing records for legal services for which Plaintiffs seek reimbursement from Defendants. (See ECF No. 140 ¶ 1.a).

### III. CONCLUSION

For the reasons set forth above, the Substitution Motion is GRANTED, the Discovery Motion is GRANTED IN PART and DENIED IN PART, and the Court orders as follows:

1. Mr. Hughes is SUBSTITUTED for Mr. Field as a Plaintiff in this action.

2. By **March 13, 2024**, Defendants shall serve the Interrogatories on Mr. Hughes.

3. By **April 12, 2024**, Mr. Hughes shall serve his responses to the Interrogatories.

4. Mr. Hughes shall promptly and continually produce the billing records for legal services for which Plaintiffs seek reimbursement by Defendants.

5. The telephone conference scheduled for February 29, 2024 is CANCELLED.

6. Because Mr. Field is no longer a Plaintiff in this action, this Order resolves the OTSC.

The Clerk of Court is respectfully directed to terminate Mr. Field as a Plaintiff; to cancel the conference scheduled for February 29, 2024; and to close ECF No. 166.

Dated:     New York, New York
           February 28, 2024

SO ORDERED.

_____
**SARAH L. CAVE**
**United States Magistrate Judge**